# In the United States Court of Federal Claims

No. 20-309C
(Filed Under Seal:  April 9, 2020)
(Reissued for Publication:  April 20, 2020)[*]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CASHMAN DREDGING AND MARINE CONTRACTING CO., LLC, | * <br> * <br> * |
| Plaintiff, | * <br> * |
| v. | * <br> * |
| THE UNITED STATES, | * <br> * <br> * |
| Defendant, | * <br> * |
| and | * <br> * |
| TRADE WEST CONSTRUCTION, INC., | * <br> * <br> * |
| Defendant-Intervenor. | * |

Postaward Bid Protest; Motion for a
Temporary Restraining Order and
Preliminary Injunction; Protest of the
Issuance by the Small Business
Administration of a Certificate of
Competency to the Awardee

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jonathan M. Baker, Washington, DC, for plaintiff.

Christopher L. Harlow, United States Department of Justice, Washington, DC, for defendant.

Tracey L. Pruiett, Atlanta, GA, for defendant-intervenor.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

In this bid protest, Cashman Dredging and Marine Contracting Co., LLC ("Cashman")
challenges the award of a dredging contract by the United States Army Corps of Engineers
("Corps").  The court has before it Cashman's motion for a temporary restraining order ("TRO")
and a preliminary injunction.  The court also has before it motions to dismiss, relying on Rules
12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims, filed by

---

[*]  The court issued this Opinion and Order under seal on April 9, 2020, and directed the
parties to submit proposed redactions by April 20, 2020.  The parties filed a status report on
April 17, 2020, in which they indicate that no material contained in the court's decision requires
redaction.

defendant and defendant-intervenor, Trade West Construction, Inc. ("Trade West").[1]  Cashman's motion is fully briefed according to an expedited schedule and is ripe for decision.  For the reasons set forth below, Cashman's motion is denied.  The court also denies the motions to dismiss as premature, because the arguments therein would be more efficiently and thoroughly argued after an administrative record has been filed and the merits of this protest have been briefed.[2]

## I.  BACKGROUND

### A.  The Solicitation

On October 4, 2019, the Corps issued Invitation for Bids ("IFB") No. W911XK20B0001, titled New Soo Lock Upstream Channel Deepening.[3]  The work is located at "the upstream approach to the locks in the north channel at the Soo Locks complex in Sault Ste. Marie, Michigan."  Pl.'s Ex. 2 at 15.  The IFB was structured to award the firm, fixed-price dredging contract, using sealed bidding procedures, "to the lowest priced bidder who [wa]s determined to be responsive and responsible."  Id. at 18 (citing Federal Acquisition Regulation ("FAR") 52.214-19).  The IFB noted that the estimated value of the contract was between $25 million and $100 million.  The awardee was required to begin performance within ten days of its receipt of the Corps' notice to proceed and was required to complete the contract work within 630 days of its receipt of the notice to proceed.  After an amendment to the IFB, the bidding deadline of November 5, 2019, was extended to November 13, 2019.

### B.  The Bids

Three timely bids were received by the Corps.  Trade West's bid was the lowest, at $52,672,800.  Cashman's bid was next lowest, at $64,271,000.  The third bid was for $65,453,000.  The Corps' independent government estimate for the project was $53,645,609.  As low bidder, Trade West would be awarded the contract unless its bid was not responsive to the IFB, or if Trade West was not a responsible contractor.  An example of a nonresponsible

---

[1]  These motions were incorporated into defendant's and Trade West's response briefs.

[2]  The court observes that the parties have established, with the exhibits attached to their briefs, an adequate record for the resolution of plaintiff's request for preliminary injunctive relief.  The court awaits a more robust record to resolve the challenges to the complaint raised by defendant and Trade West, because these challenges, at least in some instances, are grounded in facts that would be more fully developed in an administrative record.

[3]  All citations to plaintiff's moving brief are to the memorandum filed as an attachment to the motion.  In addition, because the exhibits attached to plaintiff's motion are not paginated within each exhibit, the court references these exhibit pages by the page numbers generated by the court's electronic filing system.

contractor would be one that is "not capable of executing the contract successfully due to technical, production, and quality assurance concerns." Pl.'s Ex. 1 at 4.

## C. Responsibility Concerns, Referral to the Small Business Administration, and Award

The Corps had concerns about Trade West's responsibility. The regional Contract Administration Branch ("CAB") communicated the Corps' concerns to Trade West and investigated the issue. Ultimately, "the CAB concluded that Trade West was not capable of executing the contract successfully due to technical, production, and quality assurance capability concerns [and the] CAB recommend[ed] against awarding the contract to Trade West." Id. The contracting officer ("CO") concurred, and determined that Trade West was nonresponsible. Id. at 5.

Because Trade West qualified as a small business under the terms of the IFB, however, the CO referred the responsibility issue to the Small Business Administration ("SBA"). The SBA reviews the responsibility of small business offerors under its Certificate of Competency ("COC") program. See FAR 19.601(a) (stating that a COC certifies "that the holder is responsible (with respect to all elements of responsibility, including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, tenacity, and limitations on subcontracting) for the purpose of receiving and performing a specific Government contract"). Once the CO found Trade West to be nonresponsible, the CO was obliged to refer the responsibility issue to the SBA. See FAR 19.601(c) ("A contracting officer shall, upon determining an apparent successful small business offeror to be nonresponsible, refer that small business to the SBA for a possible COC, even if the next acceptable offer is also from a small business.").

The Corps referred the responsibility issue to the SBA on December 20, 2019. The file sent to the SBA included the CO's "Determination of Contractor Nonresponsibility, [the] Solicitation and Amendments, Trade West's bid, the bid abstract, the preaward survey information and [the] CAB's conclusions, Trade West's preaward survey submission, and Trade West's [Contractor Performance Assessment Reporting System evaluations]." Pl.'s Ex. 1 at 5. Once the SBA received the file, a number of email exchanges, and at least one telephone conversation, took place between Ms. Heather Turner, the CO, and Mr. Peter Van Steyn, the SBA's representative. This dialog permitted the Corps to further elaborate on its concerns about Trade West's responsibility, to answer the SBA's questions about the dredging contract, and to ask questions regarding the SBA's investigation into the responsibility issue. Most of this activity appears to have occurred between January 7 and January 24, 2020. The Corps indicated that it would not oppose the SBA's issuance of a COC in favor of Trade West on January 24, 2020.

On January 24, 2020, the SBA issued a COC for Trade West and notified the Corps that it was required to award the dredging contract to Trade West. At that time, the relevant regulation stated:

> The contracting officer shall award the contract to the concern in question if the SBA issues a COC after receiving the referral. An SBA-certified concern shall not be required to meet any other requirements of responsibility. SBA COC's are conclusive with respect to all elements of responsibility of prospective small business contractors.

FAR 19.602-4(b) (2018). Accordingly, the CO awarded the dredging contract to Trade West on January 30, 2020.

### D. Procedural History

On February 7, 2020, Cashman filed an agency-level protest with the Corps. Among other concerns, Cashman argued that Trade West could not comply with the limitation on subcontracting clause of the contract, and that this inability made Trade West's bid nonresponsive. However, as explained in its denial of Cashman's protest, the Corps viewed this concern as a matter of responsibility, not responsiveness.

First, the Corps noted an important distinction articulated in many decisions issued by the Government Accountability Office ("GAO"). Generally, these decisions indicate that "when a [bidder] agrees to perform the work in conformity with the solicitation the bid is responsive; any concerns involving a small business's ability to perform in accordance with the bid relates to responsibility and must [be] forwarded to the [SBA]." Pl.'s Ex. 1 at 8. The Corps concluded that "[w]hile Cashman's concerns are valid, and in fact were raised and considered by the Contracting Officer as well, they concern responsibility, not responsiveness. As such, this allegation is without merit." Id.

Regarding Cashman's request that the Corps petition the SBA for reconsideration of the COC, the Corps held that the redress sought by Cashman was not available in these circumstances. The Corps noted that the SBA's COC determination is conclusive as to a small business concern's responsibility. Id. at 9-10 (citing 15 U.S.C. § 637(b)(7) (2018)). Accordingly, the Corps denied Cashman's protest on March 3, 2020.

On March 18, 2020, Cashman filed the instant protest, the grounds of which were enumerated in Counts I, II, and III of the complaint. Those three protest grounds will be discussed below. Because the Corps declined to voluntarily stay performance of Trade West's contract, the court ordered briefing on Cashman's motion for a TRO and preliminary injunction. Defendant and Trade West also moved to dismiss the complaint as they responded to Cashman's motion. The court held oral argument regarding these motions on April 9, 2020.

## II. STANDARD OF REVIEW

The United States Court of Federal Claims ("Court of Federal Claims") has the authority to award injunctive relief to a bid protest plaintiff pursuant to 28 U.S.C. § 1491(b)(2). The court considers four factors when ruling on a motion requesting a TRO and a preliminary injunction, determining whether (1) plaintiff is likely to succeed on the merits; (2) plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) the balance of hardships favors the

grant of injunctive relief; and (4) it is in the public interest to grant injunctive relief.  U.S. Ass'n of Imps. of Textiles & Apparel v. United States, 413 F.3d 1344, 1346 (Fed. Cir. 2005); PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

None of the four factors, taken individually, is dispositive, and a "weakness of the showing regarding one factor may be overborne by the strength of the others."  FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).  Conversely, "the absence of an adequate showing with regard to any one factor may be sufficient" to deny preliminary injunctive relief.  Id.  Preliminary injunctive relief is characterized as an extraordinary remedy.  Id.  Nevertheless, the decision to award such relief is within the discretion of the court.  Id.

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

The first factor the court considers in its resolution of Cashman's motion for a TRO and a preliminary injunction is whether Cashman is likely to succeed on the merits of its bid protest.  Here, Cashman's first protest ground is that the SBA's issuance of the COC fails the arbitrary and capricious standard of review.  Cashman's second protest ground is that the SBA violated its own procedures, established by regulation, for issuing a COC.  Third, Cashman asserts that the Corps' award of the contract, in light of these errors committed by the SBA, was itself arbitrary and capricious.  This third protest ground, as noted by the parties, succeeds or fails depending on the merits of the first two challenges raised by Cashman.  See, e.g., Pl.'s Reply 23 n.12 ("If the Court concludes that Cashman is likely to prevail on Count I or II, then it must find that Cashman is likely to prevail on Count III, as Count III argues that if the issuance of the COC was flawed, then the award [by the Corps] was necessarily flawed as well.").  Here, therefore, the court need only address Cashman's first two protest grounds, neither of which is likely to succeed on the merits.

#### 1. Issuance of a COC for Trade West by the SBA

Based on the demands of the dredging contract and Trade West's resources and experience as a contractor, Cashman first asserts that "the SBA had no rational basis for issuing the COC."  Pl.'s Mot. 2.  In other words, Cashman argues that the SBA's decision that Trade West satisfied the responsibility criteria applicable to this procurement was not rational.  This argument is not likely to succeed on the merits because, pursuant to persuasive authority, the SBA's issuance of a COC to Trade West is not subject to review under this court's bid protest jurisdiction.

Only one decision by this court, Sonoran Technology & Professional Services, LLC v. United States, 133 Fed. Cl. 401 (2017), examines this specific aspect of the court's bid protest jurisdiction, and the Sonoran holding directly addresses Cashman's first protest ground.  The Honorable Thomas C. Wheeler reviewed the most relevant authorities and concluded that "based on applicable regulations and case law, the Court . . . does not have jurisdiction to review the SBA's issuance of a COC to [the awardee]."  Id. at 404.  The court has reviewed the authorities

cited in <u>Sonoran</u>, and the authorities cited by Cashman, and concludes that Cashman cannot challenge the rationality of the SBA's issuance of the COC in this court.

It is important to distinguish between a protest brought by a small business concern that contests the refusal of the SBA to issue a COC in its favor, which is within this court's bid protest jurisdiction, and an attempt by a competitor to invalidate a COC issued by the SBA for a small business that is then awarded a government contract, which is not.  <u>Id.</u>  Cashman, in the court's view, places too much emphasis on the former category of court decisions, which are inapposite to the jurisdictional analysis required here.  As for the latter category of decisions, Cashman has not overcome the persuasive authority of <u>Sonoran</u>, as explained below.

Cashman suggests that a 1986 federal district court decision, which opined that the district court could exercise bid protest jurisdiction over a challenge to the SBA's issuance of a COC, contradicts the jurisdictional analysis in the <u>Sonoran</u> decision.  <u>See</u> <u>Ulstein Mar., Ltd. v. United States</u>, 646 F. Supp. 720 (D.R.I. 1986), <u>aff'd</u>, 833 F.2d 1052 (1st Cir. 1987).  However, Cashman makes no attempt to compare the bid protest jurisdiction of this court in 2020 with the district court's bid protest jurisdiction in 1986.  Further, neither the <u>Ulstein</u> decision, nor its affirmance by the United States Court of Appeals for the First Circuit, can substitute for the guidance provided by cases decided by the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), whose precedent binds this court.  The <u>Sonoran</u> decision relied extensively on a precedential decision of the Federal Circuit. 133 Fed. Cl. at 404 (citing <u>Cavalier Clothes, Inc. v. United States</u>, 810 F.2d 1108, 1111 & n.6 (Fed. Cir. 1987)).  Cashman, in its briefs, necessarily acknowledges the precedential guidance provided by <u>Cavalier Clothes</u>.  The <u>Sonoran</u> decision applies this binding precedent, is more persuasive than <u>Ulstein</u>, and will be followed here.

Cashman also attempts to undermine <u>Sonoran</u> by noting that this court once exercised jurisdiction over a challenge to the SBA's issuance of a COC.  <u>See</u> <u>Lawson Envtl. Servs., LLC v. United States</u>, 126 Fed. Cl. 233 (2016), <u>aff'd</u>, 678 F. App'x 1026 (Fed. Cir. 2017) (Table).  The assertion of jurisdiction is contained in one sentence in the <u>Lawson</u> opinion, however, with no distinction drawn between the type of SBA decision being challenged, i.e., refusing to issue a COC, or issuing a COC.  <u>Id.</u> at 249.  Both of the decisions relied on in <u>Lawson</u> were examples of this court reviewing the SBA's refusal to issue a COC to the protestor.  <u>Id.</u> (citing <u>CSE Constr. Co. v. United States</u>, 58 Fed. Cl. 230, 248 (2003); <u>Stapp Towing Inc. v. United States</u>, 34 Fed. Cl. 300, 306 (1995)).  As noted in <u>Sonoran</u>, the <u>Lawson</u> decision includes no substantive analysis of the court's bid protest jurisdiction over challenges to the SBA's issuance of a COC, in particular.  <u>Sonoran</u>, 133 Fed. Cl. at 404 n.2.  For these reasons, the court follows <u>Sonoran</u>, not <u>Lawson</u>.

Finally, Cashman argues that the fact that the GAO will consider challenges to the issuance of a COC in certain circumstances is an indication that such an issuance is reviewable here as well.  It is well established, however, that the bid protest jurisdiction of this court is not the same as the GAO's authority to consider bid protests.  <u>See, e.g.</u>, <u>Phoenix Air Grp., Inc. v. United States</u>, 46 Fed. Cl. 90, 101 (noting that the statutory grants of bid protest jurisdiction are different for the two bid protest fora), <u>appeal dismissed</u>, 243 F.3d 555 (Fed. Cir. 2000).  It is also

clear from the GAO decisions cited by Cashman in its reply brief that the GAO generally follows its own precedent and regulations, not Federal Circuit precedent. See, e.g., Integrity Mgmt. Servs., Inc., B-283094.2, 2000 CPD ¶ 67 (Comp. Gen. May 3, 2000) (citing 4 C.F.R. § 21.5(b)(2) and GAO decisions for its jurisdictional analysis).

The court does not find that the GAO's analysis of its own bid protest jurisdiction, which does not rely on precedent that is binding on this court, is more persuasive than the jurisdictional analysis in Sonoran. Following Sonoran, Cashman's first protest ground, which challenges the rationality of the SBA's issuance of the COC to Trade West, is not within this court's bid protest jurisdiction.[4]   The court concludes, therefore, that Cashman does not have a substantial likelihood of success on the merits of this protest ground.

## 2.   Procedure Followed by the SBA in Issuing a COC for Trade West

Cashman next contends that the award to Trade West should be invalidated because the SBA did not follow its own procedures before it issued the COC. Factually, this is a straightforward dispute that focuses on the period of time between the referral to the SBA of the Corps' Determination of Contractor Nonresponsibility on December 20, 2019, and the SBA's issuance of the COC on January 24, 2020. The legal significance of the communications between the SBA and the Corps during this time period is also fairly straightforward. But before turning to the factual record and the parties' arguments founded on that record, the court addresses a threshold legal question: Does the court possess bid protest jurisdiction to consider whether a regulation has been violated if the regulation is not for the bidders' benefit? The court must answer that question in the affirmative.

Each party has discussed this threshold legal question although the parties' arguments are somewhat cursory on this topic. The legal inquiry into whether a regulation was established to benefit bidders was articulated by the United States Court of Claims: "Not every regulation is established for the benefit of bidders as a class, and still fewer may create enforceable rights for the awardee's competitors." Keco Indus., Inc. v. United States, 492 F.2d 1200, 1206 (Ct. Cl. 1974) (citing Chris Berg, Inc. v. United States, 426 F.2d 314, 317 (Ct. Cl. 1970)).   However, the Keco analysis of bid protest errors, to the extent that analysis contradicts the current standard, is no longer the law of the Federal Circuit. E.g., Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1242 n.7 (Fed. Cir. 2010) (citing Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1078 (Fed. Cir. 2001); Keco, 492 F.2d at 1203-04); Am. Fed'n of Gov't

---

[4]   Cashman argues that the Sonoran decision erred in its interpretation of Cavalier Clothes. The court believes, however, that Judge Wheeler correctly applied the guidance provided by Cavalier Clothes to the issue of this court's bid protest jurisdiction over a challenge to the SBA's issuance of a COC, under the facts of that case. The court notes that an administrative record was filed in that protest before Judge Wheeler issued the Sonoran decision. 133 Fed. Cl. at 403. The limited facts before the court here, where the administrative record has not yet been filed, do not indicate that the circumstances of this protest are distinguishable from the facts in Sonoran. Accordingly, the court declines to rule on the jurisdictional issues at this juncture without the benefit of an opportunity to review a complete administrative record.

Employees v. United States, 258 F.3d 1294, 1300 (Fed. Cir. 2001) (citing 28 U.S.C. § 1491(b)(4) (2018); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1331-33 (Fed. Cir. 2001); Keco, 492 F.2d at 1203-04).

Thus, it is no longer appropriate to inquire, in the bid protest context, into the question of whether a regulation was established to benefit bidders.  See Impresa, 238 F.3d at 1333 ("[C]ases such as Keco and [Trilon Educational Corp. v. United States, 578 F.2d 1356 (Ct. Cl. 1978),] are based on the implied contract theory of recovery and do not govern [Administrative Procedure Act, 5 U.S.C. § 706,] review of contracting officer decisions.").  The burden is simply for "the disappointed bidder [to] show 'a clear and prejudicial violation of applicable statutes or regulations.'"  Id. (quoting Latecoere Int'l, Inc. v. U.S. Dep't of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994); Kentron Haw., Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C. Cir. 1973)).  Here, therefore, the court does not inquire into the intended beneficiaries of the regulation alleged by Cashman to have been violated by the SBA.

The regulation in question is 13 C.F.R. § 125.5, titled "What is the Certificate of Competency Program?"  Portions of this regulation identify the steps the SBA must follow regarding certain notifications due the procuring agency before the SBA issues a COC.  One set of steps applies to contracts of a value between $100,000 and $25 million.  See 13 C.F.R. § 125.5(h) (2019).  At this level of contract value, the SBA must contact the procuring agency's CO.

In this procurement, the CO for the Corps is Ms. Heather Turner.  According to the documents supplied by defendant, the SBA's communications between December 20, 2019, and January 24, 2020, were with Ms. Turner.  According to Cashman, the SBA appears to have followed, at least in most respects, the notification protocol set forth in 13 C.F.R. § 125.5(h), which is for contracts of a lesser monetary value than Trade West's contract with the Corps.[5]

For contracts of a value above $25 million, the SBA is required to follow the steps identified in 13 C.F.R. § 125.5(j) before issuing a COC.  Cashman alleges that the SBA did not comply with the following provisions of the regulation:

(1) Prior to taking final action [on a COC], SBA Headquarters will contact the contracting agency at the secretariat level or agency equivalent and afford it the following options:

(i) Ask SBA Headquarters to suspend the case so that the agency can meet with Headquarters personnel and review all documentation contained in the case file; or

---

[5]  Cashman argues that the SBA representative providing notification to Ms. Turner was not identified as an Area Director, the type of official required to provide notification to the procuring agency under 13 C.F.R. § 125.5(g)-(h).

> (ii) Submit to SBA Headquarters for evaluation any information which the contracting agency believes has not been considered.

13 C.F.R. § 125.5(j) (2019).  Ms. Turner, the CO, does not appear to be at the "secretariat level or agency equivalent"; thus, in Cashman's view, for this and other reasons the SBA's communications with the Corps fail to satisfy the procedural requirements of 13 C.F.R. § 125.5(j)(1).[6]

Defendant does not insist, on these facts, that the SBA complied with the procedural requirements of 13 C.F.R. § 125.5(j)(1).  Instead, defendant points to the communications with Ms. Turner and concludes that the Corps was given adequate notice of the SBA's intention to issue a COC and notice of the Corps' options should it wish to oppose that action.  Further, defendant argues that the jurisdictional holding in Sonoran, regarding challenges to the rationale of the issuance of a COC, should also apply to challenges to procedural defects in the issuance of a COC.  In other words, it is the government's position that there is no jurisdiction in this court for Cashman's second protest ground, just as there is no jurisdiction in this court for Cashman's first protest ground.

The court agrees with defendant that the SBA provided adequate notice to the Corps. Whether the holding in Sonoran should be extended to bar challenges to procedural defects in the SBA's issuance of a COC is a different question.  Although it would be a small leap, logically, to extend the Sonoran holding to exclude from this court's bid protest jurisdiction challenges to defects in the SBA's notification procedures as it issues a COC, the court need not decide that issue.  Here, it is more important that Cashman has not shown that it was prejudiced by the lack of formality in the notification the SBA provided the Corps.

It is the bid protest plaintiff's burden to show that a prejudicial violation of a procurement regulation occurred.  Impresa, 238 F.3d at 1333.  Ms. Turner's communications with her colleagues at the Corps show that the Corps was on notice, before January 24, 2020, that it could oppose the impending issuance of the COC.  Further delays to contract performance, beyond the delay occasioned by Cashman's agency-level protest, were weighed against the potential benefits of questioning and/or resisting the SBA's competency finding.  The Corps had already communicated some of its most urgent concerns, through Ms. Turner, to the SBA between January 15, 2020, and January 23, 2020, which did not persuade the SBA to decline to issue a COC.  The Corps knew that the SBA Headquarters would make the final decision as to the COC, and that intervening in that decisional process would cost valuable time.  The Corps made an informed decision and did not oppose the COC.

---

[6] Cashman also argues that the SBA did not provide clear and detailed information regarding the options available to the Corps should it decide to oppose the COC.  The CO, however, appears to have had adequate notice regarding the options available to the Corps.  The CO was informed, for example, that the Corps could provide additional information to the SBA should the Corps oppose the COC.

Although Cashman argues that a formal notification, in compliance with 13 C.F.R. § 125.5(j)(1), would have led to a different result, the record shows no indication that the Corps would have responded any differently.  Cashman must show that the violation of 13 C.F.R. § 125.5(j)(1) prejudiced it, or, in other words, that it might have received the contract award in the place of Trade West if the violation had not occurred.  That burden has not been met, and does not appear likely to be met once the merits of this protest have been briefed.  Absent "a showing of harm specific to the asserted error, there is no injury to redress."  Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1381 (Fed. Cir. 2009).

In addition, the flaws in the notification provided to the Corps by the SBA constitute only a de minimis error under the circumstances of this procurement.  De minimis errors are not enough to overturn a contract award.  Grumman Data Sys. Corp. v. Widnall, 15 F.3d 1044, 1048 (Fed. Cir. 1994).  Minor flaws in notification procedures that have no substantive effect on the party receiving the notification are best characterized as harmless defects.  Cf. Decker & Co. v. West, 76 F.3d 1573, 1579 (Fed. Cir. 1996) (stating that "harm should accompany a defect in an otherwise proper termination notice in order for the contractor to seek relief based on that defect" (citing Phila. Regent Builders, Inc. v. United States, 634 F.2d 569, 572-73 (Ct. Cl. 1980))).  Because Cashman has identified only a de minimis error regarding 13 C.F.R. § 125.5(j)(1), and has not shown that this error prejudiced it, its second protest ground does not have a likelihood of success on the merits.

## B.  Irreparable Injury

With respect to irreparable injury, the second injunctive relief factor, a protestor "must show that without a preliminary injunction it will suffer irreparable harm before a decision can be rendered on the merits."  Akal Sec., Inc. v. United States, 87 Fed. Cl. 311, 319 (2009); accord IBM Corp. v. United States, 118 Fed. Cl. 677, 683-84 (2014).  The Court of Federal Claims has recognized that a lost opportunity to compete for a contract—and the attendant inability to obtain the profits expected from the contract—can constitute an irreparable injury.  See, e.g., Akal Sec., 87 Fed. Cl. at 319.  Cashman argues that it will lose the opportunity to compete for the dredging contract, and that it will lose the profits it would have gained from the contract, "should the Corps allow Trade West to move forward with performance during the pendency of this protest." Pl.'s Mot. 22.

Defendant and Trade West argue that if Cashman prevails in this protest, it is highly likely that Cashman, as the bidder with the next lowest price, will not only compete for the dredging contract, it will be awarded the contract.  Thus, in their view, there is no irreparable harm to Cashman in the absence of preliminary injunctive relief.  In its reply brief, Cashman notes that the government has not waived its right to later argue that its investment in Trade West's contract performance should be weighed against the issuance of a permanent injunction in favor of Cashman.

The court concludes that the IFB effectively nullifies the irreparable harm posited by Cashman, because Cashman stands next in line for the dredging contract if it prevails on the merits of its protest.  Further, should the government invoke its investment in Trade West's

continuing contract performance as a harm weighing against the issuance of a permanent injunction of Trade West's contract, the court would regard that investment as flowing from the government's decision to proceed with contract performance, at its own risk, despite Cashman's protest in this forum.  See Peraton Inc. v. United States, 144 Fed. Cl. 59, 72 (2019) (citing GTA Containers, Inc. v. United States, 103 Fed. Cl. 471, 491 (2012)) (noting that when the government chooses not to voluntarily stay performance during a bid protest, the foregone investment in an enjoined, terminated contract is a calculated risk of the government's own choosing).  Because Cashman has not shown that "it will suffer irreparable harm before a decision can be rendered on the merits," Akal Sec., 87 Fed. Cl. at 319, the second injunctive relief factor weighs against the issuance of a TRO and preliminary injunction.

### C. Balance of Hardships

The third injunctive relief factor is the balance of the hardships among the parties.  In addition to considering whether a protestor would suffer an irreparable injury absent injunctive relief, "[t]he court must balance the harm plaintiff would suffer without preliminary relief against the harm that preliminary relief would inflict on defendant and defendant-intervenor.  Generally, if the balance tips in favor of defendant, a preliminary injunction is not appropriate."  Id. at 320 (citations omitted).  Here, as stated above, the court sees no hardship for Cashman if preliminary injunctive relief is withheld at this time.

As to the other parties, the government argues that the Corps would be greatly harmed by a preliminary injunction of Trade West's contract: "Any delay now . . . would consume a large part of the viable construction season and cause delays that would cascade through all three New Soo Lock construction phases. . . .  [A] delay in New Soo Lock construction could have catastrophic results."  Def.'s Resp. 11 (citing Def.'s App. 3).  Trade West persuasively argues that it would be harmed if its mobilization of employees and equipment were halted, because part of the prime construction season would be lost.  Defendant and Trade West have demonstrated the hardships they would experience if a preliminary injunction issues at this time.

In its reply brief, Cashman cites System Studies & Simulation, Inc. v. United States, 146 Fed. Cl. 186, 203 (2019), for the proposition that only in exceptional circumstances will delays in contract performance suffice to avoid an injunction.  Here, however, all parties acknowledge that the New Soo Lock dredging contract is part of a large and critical upgrade to navigation through the Great Lakes.  Delays to the dredging contract at issue in this protest would be exceptionally harmful in light of the parties' representations.  Here, the court sees the balance of the hardships as weighing heavily against the issuance of preliminary injunctive relief.

### D. Public Interest

The fourth and final injunctive relief factor is the public interest.  When "employing the extraordinary remedy of injunction," a court "should pay particular regard for the public consequences" of doing so.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).  It is undisputed that there is a strong public interest in safeguarding the fairness of government procurements.  Bona Fide Conglomerate, Inc. v. United States, 96 Fed. Cl. 233, 242 (2010)

(noting the "overriding public interest in preserving the integrity of the procurement process"). However, "the public interest is also served when the court does not interfere in a procurement absent a legally compelling reason to do so." Akal Sec., 87 Fed. Cl. at 321.

Cashman argues that it is in the public interest for the SBA to follow its regulations and to only issue a COC when there is a rationale that can withstand this court's scrutiny. Defendant contends that a preliminary injunction is not in the public interest, because there was no violation of procurement laws in the award of the dredging contract to Trade West, and because Trade West's dredging contract is of critical importance and should not be delayed. Trade West argues that it is in the public interest to support small businesses such as Trade West, and notes further that taxpayers will realize considerable savings because the Corps chose the lowest-priced bid on the dredging contract.

Cashman makes two principal points in its reply brief. First, Cashman views the harm caused by a delay of contract performance on the dredging contract to be exaggerated by the government. Second, Cashman suggests that it is not in the public interest to have an ill-prepared small business concern attempt to perform a critical project that it cannot successfully complete.

The court concludes, having considered all of the parties' arguments and the exhibits attached to their briefs, that the public interest factor also weighs heavily against the issuance of preliminary injunctive relief in this protest. There is a stronger public interest in the continued performance of the dredging contract, especially where, as here, Cashman will be able to fairly compete for and likely win the dredging contract if its arguments on the merits prevail. Further, it is difficult to see the public interest in a preliminary injunction where, as here, plaintiff's success on the merits is so unlikely. See Wind Tower Trade Coal. v. United States, 741 F.3d 89, 101 (Fed. Cir. 2014) ("[I]t is [not] in the public interest to issue preliminary injunctions in actions where there is no likelihood of success on the merits." (quoting and affirming Wind Tower Trade Coalition v. United States, 904 F. Supp. 2d 1349, 1359 (Ct. Int'l Trade 2013))).

## IV. CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive, without merit, or are unnecessary for resolving the matters currently before the court.

Cashman has not shown a likelihood of success on the merits. Further, the irreparable harm, balance of hardships, and public interest factors all weigh in favor of defendant and Trade West. Therefore, the court **DENIES** Cashman's motion for a temporary restraining order and a preliminary injunction. The court also **DENIES** defendant's and Trade West's motions to dismiss as premature. The parties shall file a joint status report suggesting a schedule for further proceedings **no later than Monday, April 20, 2020**.

The court has filed this ruling under seal. The parties shall confer to determine proposed redactions that are agreeable to all parties. Then, **no later than Monday, April 20, 2020**, the

parties shall file a joint status report under seal indicating their agreement with the proposed redactions and **attaching a complete copy of the court's opinion with all redactions clearly indicated**.  The parties also shall, **by the same date**, file any redacted versions of documents they filed under seal in this case to the extent such redacted versions have not already been filed.

       **IT IS SO ORDERED.**

s/ Margaret M. Sweeney           

MARGARET M. SWEENEY

Chief Judge
